FAY SHAUL, Plaintiff, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant.

Supreme Court, Montgomery County, February 11, 1928.

Judgments — validity — action tried before court without jury — under Civil Practice Act, § 440, decision is essential to judgment — judgment entered without decision cannot be attacked collaterally — arrest — action on bond given to obtain release from civil arrest — principal in bond was previously convicted of larceny forming basis of civil action — Penal Law, § 643, not exclusive remedy — plaintiff had right to arrest principal under Civil Practice Act, § 826 — execution against person may issue to sheriff of any county under Civil Practice Act, § 648.

The plaintiff brought an action against one who had embezzled money and an order of arrest was granted. The defendant therein was released upon the bond upon which this action is based. Said person has been convicted of the crime and is out on bail. The plaintiff recovered judgment in the civil action against the defendants, and upon the return of an execution against the property unsatisfied and also the return of a body execution that said person could not be found, brought this action. The original action was tried before the court without a jury and the judge presiding directed a judgment to be entered in favor of the plaintiff but no decision was ever made or filed. The judge before whom the case was tried is now dead.

While, under section 440 of the Civil Practice Act, a decision is essential to a judgment in a case tried without a jury, nevertheless a judgment entered without a decision is not absolutely void and it cannot be collaterally attacked.

An action for civil damages does not merge in the felony and the plaintiff had a

right to proceed against said person in a civil action in which he could have the defendant arrested under section 826 of the Civil Practice Act. Section 643 of the Penal Law does not afford an exclusive remedy.

The contention by the defendant, that the arrest of its principal in the civil action following his arrest in the criminal action constitutes double jeopardy, cannot be sustained.

The plaintiff had a right under section 648 of the Civil Practice Act to issue a body execution to any sheriff and was not confined to the sheriff of the county of said defendant's residence.

ACTION against surety company on its undertaking of bail.

*Harry V. Borst,* for the plaintiff.

*Rosendale, Dugan & Haines* [*P. C. Dugan* and *John J. McManus* of counsel], for the defendant.

HEFFERNAN, J. This is an action against defendant on its undertaking of bail in the sum of $7,500 to the effect that one Philip Kastel would, at all times, render himself amenable to any mandate which might be issued to enforce a final judgment against him in an action by plaintiff.

The facts are not in dispute. On September 26, 1922, the grand jury of the county of Montgomery, at a Trial Term of the Supreme Court, returned an indictment against Kastel, charging him with the crime of grand larceny in the first degree in appropriating to his own use the sum of $5,565 belonging to this plaintiff. Kastel was brought to trial upon this indictment in the Montgomery County Court and on December 6, 1926, a judgment of conviction was rendered against him and he was thereupon sentenced to imprisonment in the State prison at Dannemora for a term of years. Thereafter this judgment was unanimously affirmed by the Appellate Division of the Supreme Court in this department. (*People v. Kastel,* 221 App. Div. 315.) Subsequently he appealed to the Court of Appeals in which court the cause is now pending. Defendant obtained a certificate of reasonable doubt from a judge of that court and is at large on bail. He has never actually been incarcerated by virtue of the judgment in the criminal proceedings.

The plaintiff instituted a civil action against Kastel in this court to recover the money misappropriated and converted and that action was based on the same transaction involved in the criminal proceedings. Plaintiff obtained an order from a justice of this court to accompany the service of the summons directing the sheriff of Montgomery county to arrest the defendant and hold him to bail in the sum of $7,500. By virtue of that order Kastel, on December 6, 1926, was apprehended and defendant in this suit, in order to procure his release on bail, gave the undertaking sued on.

On September 20, 1927, the civil action was brought to trial at

a Trial Term of this court and by consent of the parties was tried before the late Mr. Justice ANGELL without a jury. The clerk's minutes show that at the conclusion of the testimony the court directed a judgment for plaintiff for the full amount claimed, with interest, aggregating $8,113.48. On September 23, 1927, a judgment for plaintiff for that amount was entered and docketed in the clerk's office. No written decision was ever made or filed and apparently plaintiff's counsel neglected to present to Justice ANGELL the usual proposed decision containing findings of fact and conclusions of law with a direction for the entry of judgment based thereon. On October 22, 1927, an execution against property was issued on that judgment to the sheriff of the county of New York, being the county of the judgment debtor's residence, and later this was returned unsatisfied. On November 1, 1927, a like execution was issued to the sheriff of Montgomery county and a like return made by that official. On November 4, 1927, an execution against the debtor's person was issued to the sheriff of Montgomery county and on November 22, 1927, a return was made thereon that the defendant could not be located. Thereafter, this action was commenced.

Defendant challenges the validity of the judgment against its principal and contends that the paper so labeled is a nullity in the absence of a written decision and that it cannot be the basis of a valid execution and that the various executions issued thereon are void. The Civil Practice Act (§ 440) provides: " The decision of the court upon the trial of the whole issues of fact must separately state the facts found and the conclusions of law, and direct the judgment to be entered thereon, which decision when filed shall form part of the judgment-roll."

Section 442 of the same act fixes the time within which such a decision must be filed and in the event of failure to do so either party may move at Special Term for a new trial upon that ground, and upon the hearing of the application the court must make an order for a new trial either absolutely or unless it is filed within a time specified in the order.

It is conceded that the judgment was entered without any decision upon which to base it. The case was tried but so far as the record shows has not been decided. In an action tried before the court without a jury there is no authority for the entry of a judgment until the court has made and filed a decision disposing of the issues. A final judgment determining the issues cannot be upheld in the absence of the findings or formal decision required by the provisions of the section quoted. It is no longer an open question that neither the entry in the clerk's minutes nor the opinion of the court can

Supreme Court, February, 1928.                    [Vol. 131

take the place of a formal decision. (*Electric Boat Company* v. *Howey*, 96 App. Div. 410; *Kent* v. *Common Council*, 90 id. 553; *Smith* v. *Geiger*, 202 N. Y. 306; *Ventimiglia* v. *Eichner*, 213 id. 147; *Minner* v. *Minner*, 238 id. 529.) While it is true that the presiding justice expressed the opinion that the plaintiff was entitled to recover and orally directed the entry of judgment, it is likewise true that this direction does not constitute a decision. Where no decision is filed or where the decision filed is insufficient to support the judgment the usual practice is to remit the case to the trial judge in order that the requisite decision may be made *nunc pro tunc.* (*Hall* v. *Beston*, 13 App. Div. 116; *Shaffer* v. *Martin*, 20 id. 304; *People ex rel. Havron* v. *Dalton*, 77 id. 499; *Smith* v. *Geiger, supra.*) The purpose of the decision evidently is that there shall be something to authenticate the judgment, something that shall place beyond doubt the precise points decided. Like the verdict of a jury the decision is not the judgment but an order for it and the judgment itself is the embodiment in legal procedure of the result of the decision.

It has long been settled by adjudication that a judgment or decree of a court which has jurisdiction of the parties and the subject-matter, unless reversed or annulled in some proper proceeding, is not open to attack in any collateral action or proceeding except for fraud in its procurement. It is an elementary principle, recognized in all the cases, that in order to give binding effect to a judgment of any court, whether of general or limited jursidiction, it is essential that the court should have jurisdiction of the person as well as the subject-matter and that the want of jurisdiction over either may always be set up against a judgment when sought to be enforced or when any benefit is claimed under it. In this case it is not pretended that there is any other tribunal before which the plaintiff should have brought his suit. He submitted his claim to a court which has general jurisdiction in law and in equity. It may be conceded that the judgment is voidable and subject to annulment on a proper direct application for that purpose. Although the judgment is erroneous, it seems to me that it is not subject to collateral impeachment and that it must be respected until set aside. Where the statutes require findings of fact to serve as a basis of the judgment the omission of this requisite will render the judgment erroneous although not absolutely void. On the other hand, a judgment which is absolutely void " compels no one, binds no one, protects no one," is entitled to no respect and may be attacked in collateral proceedings by any one with whose rights or interests it conflicts. Although there is no precedent in this State which has been called to my attention, there is authority

in text books and in other jurisdictions for the proposition that where no question of jurisdiction is raised a judgment or decree cannot be collaterally impeached because based on defective findings by the court, or given without findings at all.   (34 C. J. 563; *Maryott* v. *Gardner*, 50 Neb. 320; *Breeze* v. *Doyle*, 19 Cal. 101; *Ex parte Bennett*, 44 id. 84, 87; *Johnston* v. *San Francisco Savings Union*, 75 id. 134; *Matter of Ross*, 180 id. 651.)

Defendant also contends that the action against Kastel could not proceed to judgment after the latter's conviction except in accordance with the provisions of section 643 of the Penal Law and that his imprisonment on a body execution is not permissible because it would subject him to be twice placed in jeopardy for the same offense.   The latter section provides, in substance, that a person injured by the commission of a felony for which the offender is sentenced to imprisonment in a State prison is deemed a creditor of the convict and of his estate after his death, and that the damages sustained by the injured person by reason of the felonious act may be ascertained in an action brought for that purpose against the trustees of the estate of the offender appointed under the provisions of the statute, or the executor or administrator of the offender's estate.   The learned counsel for defendant assert that this is the exclusive remedy, and that it is of no importance that Kastel has not actually begun the service of his sentence because he is in the custody of his bondsmen who, by giving bail for him, have been constituted his jailers.   There can be no doubt about the proposition that where bail is given, the principal is regarded as delivered into the custody of his sureties and that their dominion is a continuance of the original imprisonment because whenever they choose to do so they may seize him and deliver him up in their discharge.   (*Taylor* v. *Taintor*, 83 U. S. [16 Wall.] 366.)   At common law at one time it was considered that in the case of felonies the private wrong and injury were entirely merged in the public wrong, so that no civil cause of action therefor could arise.   Later it was held that the private injury was not merged but the right of action merely suspended, and that upon grounds of public policy the civil action could not be maintained until public justice had been vindicated by a criminal prosecution against the wrongdoer.   The suspension lasted only until the criminal prosecution could be had and the action might then be maintained whether the prosecution resulted in a conviction or acquittal.   (1 C. J. 954, 955.)   Evidently the reason of the rule of merger was that at common law a felony was punished by the death of the criminal and the forfeiture of all of his property and that an action against a defendant whose body could not be taken in execution and whose

property belonged to the king would be a useless and fruitless remedy. In this country the decisions seem to have been uniformly against the doctrine of merger and the doctrine of suspension of the civil remedy, in most jurisdictions, has never been recognized or has been repudiated by the courts or by statute. (1 C. J. 955, 956.) In our own State the rule of the common law was abrogated by chapter 60 of the Laws of 1801. This provision was continued in the Revised Statutes as follows: " The right of action of any person injured by any felony, shall not be merged in such felony, or be in any measure affected thereby (2 R. S. 292, § 2)," and in substantially the same form in the Civil Practice Act (§ 9). It is thus apparent that actions for civil damages arising out of felonies were placed upon the same footing as those arising out of misdemeanors and that the right to recover damages in such an action is no longer merged in the felony. (*Gordon* v. *Hostetter*, 37 N. Y. 99.)

In support of its contention defendant relies on *Matter of Townsend* v. *Nebenzahl* (8 Abb. N. C. 427; 20 Hun, 81; appeal dismissed, 81 N. Y. 644). A critical examination of that case discloses that it does not avail defendant. There, the plaintiff endeavored to secure two orders of arrest and the facts on which he proceeded in both instances were substantially the same. One of the orders was procured under what is known as the Stillwell Act, being chapter 300 of the Laws of 1831, which was an act to abolish imprisonment for debt and to punish fraudulent debtors. Evidently the plaintiff was endeavoring to avail himself of the same civil remedy in both cases. The court held that while a creditor may elect as to which of two courses he will adopt, he cannot resort to both. A very different question is presented here. The plaintiff did not seek to pursue double remedies. He endeavored to avail himself of the provisions of section 826 of the Civil Practice Act which entitled him to an order of arrest against Kastel on the allegations contained in his pleading. Neither in that section nor in any of the related sections is there any exception or exemption from arrest because a defendant has been convicted in a criminal action involving the same facts upon which the civil action is based. The right to arrest would be of little or no value to a plaintiff if such an exception or exemption were made because in many of the cases in which a plaintiff is entitled to such an order the defendant is also liable to criminal prosecution for the same offense by the public authorities. If the contention of the defendant is correct, then by the same token the arrest of a defendant in a civil action would be a bar to his subsequent indictment or prosecution in criminal proceedings. In every such case a defendant could successfully plead

the former jeopardy. The absurdity of such a proposition is obvious.

Finally, defendant urges that the issuance of an execution to the sheriff of Montgomery county against Kastel's person was unauthorized in any event, and that it could only issue to the county of his residence. It seems to me that this contention is unsound. An execution against property was issued to the sheriff of New York county and was returned unsatisfied. An execution against Kastel's person could not be issued until an execution against his property had been returned wholly or partly unsatisfied. (Civ. Prac. Act, § 766.) An execution against the person may issue to the sheriff of any county. (Civ. Prac. Act, § 648.) That section does not mean that the process for the defendant's arrest must be issued to the sheriff of the county of his residence. As was said in *Spilker* v. *Abrahams* (136 App. Div. 841): " If it were necessary that the execution be issued to the sheriff of the county of the debtor's legal residence, it would be an easy matter to avoid its effects by remaining away from that county. This enactment was to prevent such a result."

Plaintiff is, therefore, entitled to judgment for the amount demanded in his complaint, with costs.